# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## STATESBORO DIVISION

OLAUDAH McKENZIE,       )
                                 )
      Movant,            )
                                 )
v.                            )            CV616-086
                                 )            CR615-001
UNITED STATES OF AMERICA,       )
                                 )
      Respondent.        )

## **REPORT AND RECOMMENDATION**

Guilty-plea convicted for his participation in a drug distribution conspiracy, docs. 161 (plea agreement), 245 (judgment),[1] Olaudah McKenzie moves under 28 U.S.C. § 2255 to have his sentenced reduced. Docs. 326 & 327. The Government filed a response and Scott filed a reply. Docs. 1245, 1271. He seeks to exploit the new rule announced in *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015), and made retroactive by *Welch v. United States*, 578 U.S. __, 136 S. Ct. 1257 (2016), to neutralize his 169-month enhanced[2] sentence, and contends

---

[1] The Court is citing to the criminal docket in CR615-001 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

[2] The enhancement was based upon McKenzie's prior convictions for aggravated assault, felony obstruction of a law enforcement officer, and possession of cocaine with intent to distribute. PSR at ¶¶ 30, 35, 38, 39, 51; *see also* doc. 342-1-2 (felony

his counsel was ineffective for, among other things, not doing so earlier. Docs. 326 & 327. The Government opposes. Doc. 342. Review of the parties' briefing shows that McKenzie's motion must be denied.

## A.    BACKGROUND

Movant was charged with conspiring to possess with intent to distribute 500 grams or more of cocaine (Count 1), distribution of cocaine (Count 2), and three counts of using a communication facility (telephone) to facilitate the conspiracy (Counts 19-21). Doc. 1. He pled guilty to Count 1 in exchange for the dismissal of the other Counts. Doc. 159 & 161. As part of his plea agreement, McKenzie agreed to the accuracy of the allegations against him and waived his right to appeal or collaterally attack his conviction and sentence. Doc. 161 at 4-5, 8.

At his plea hearing, he agreed with most of the testifying law enforcement agent's allegations, but disputed that he participated in the day-to-day activities of the drug conspiracy since 2012 because he was incarcerated on other charges. Doc. 337 at 15. He claimed he did not know it was a "conspiracy," but admitted he knowingly took part in

_____

charge and guilty plea for violations of O.C.G.A. §§ 16-10-24 & 16-13-30); doc. 345 at 5 (admitting he "was convicted in a Georgia state court" of aggravated assault in violation of O.C.G.A. §16-5-21).

some drug operation "to provide some means of income to take care of [his] mom and [his] daughter at the time." *Id.* at 29. Probation prepared a Presentence Investigative Report (PSR), recommending an advisory guideline range of 151 to 188 months' imprisonment based on his criminal history and offense. PSR at ¶ 74.

McKenzie did not object to the PSR (PSR, Addendum), but at sentencing he disputed the grams-to-ounces conversion of the weight of cocaine hydrochloride he had been caught with, the clarity of the conversations recorded in a wiretap, and the "overrepresentation" of his criminal history. Doc. 339 at 7. He stated that he was

> not withdrawing my guilty plea or whatever. I'm guilty of what I done. I've pled guilty to that, to the lesser offense. To my impression, when I pled guilty to the lesser offense included in it, I thought and I had the impression that I was being separated or being looked at -- what I've got caught for doing.
>
> [ ¶ ]
>
> But anyway, to stick to the subject, I came and -- I came to the conclusion that the overall combined gram, if they're going to give me -- my codefendant grams at 500-and-something or other -- I've got it written down, ma'am. It's in here if you would inspect this. But it's 500-and-something total. For some reason, 100-and-something or 200-and-something grams just miraculously put me over the 700-kilogram limit to put me as a career offender.

Doc. 339 at 8-9. The Court noted that it appeared his objections had been waived, but in light of the sentence he faced, allowed the

Government to respond:

Part of the investigation of this defendant involved the controlled purchase of cocaine from this defendant. That videotape -- there was a videotape and an audiotape, and it captured, and accurately captured, that purchase from him.

Additionally, Your Honor, there was a wiretap in that -- in this case, and there were dozens and dozens of calls that Mr. McKenzie was on speaking with Mr. Green with regard to relevant drug-related purchases. Those buys, Your Honor, were calculated correctly by the probation officer. Those quantities were calculated correctly by the probation officer and are listed in the presentence report.

Your Honor, this defendant also, based on his criminal history, is a career offender, meaning one buy -- one controlled purchase would make him eligible for what he is facing today. He has a number of convictions, Your Honor. In fact, with regard to the allegation that his criminal history category is underrepresented [sic], he has 18 criminal history points, and the book only goes up to 13. So, in fact, his criminal history is underrepresented, not overrepresented.

With regard to his convictions, Your Honor, he has been convicted of aggravated assault, obstruction, obstruction, obstruction of a law enforcement officer, obstruction of a law enforcement officer, possession of cocaine, possession of cocaine with intent, fleeing, battery. He is the very definition of a career offender as Congress intended, and he has earned every day that the career offender category calls for.

So, Your Honor, with regard to the calculation, the probation officer is correct in his calculation based on the controlled purchases, based on the wiretap calls, the dozens of calls listed here in the presentence report. With regard to the criminal calculations, the probation officer is absolutely correct that he is a career offender facing a Criminal History Category 6. It would be higher if the guidelines went any higher.

4

> And the probation officer has conservatively attributed him with 500 grams of cocaine -- 177 of base, 343 of powder, converted that to marijuana. That is a conservative estimate given this defendant's length of time in his -- in this conspiracy and the overwhelming volume of evidence against him.

Doc. 339 at 11-13. The Court heard further testimony from one of the investigative case agents in support of the Government's response, *id.* at 13-17, and overruled all of McKenzie's objections except one. *Id.* at 19, 20-31. However, the two-point level reduction resulting from the Court's grant on that single objection did not change McKenzie's category as a career offender. *Id.* at 30-31. The Court determined "that his offense level is a 29 with a Criminal History Category [of] 6." *Id.* at 35. McKenzie offered as his final plea for a sentence reduction that

> I know I have broke the law. And at the time when I broke the law, I thought I could have got away with it because I had -- at the time, I didn't have no income at the time, and I tried something. And I'm not -- I'm not proud of it. I'm not proud of the incident or the turn of events.

Doc. 339 at 39. Based on the PSR, testimony, and supporting briefs from counsel and the Government, the Court sentenced McKenzie to 169 months' imprisonment. *Id.* at 43-44. He did not appeal.

## B. ANALYSIS

McKenzie presents several grounds for relief: (1) "prosecutorial misconduct" for an alleged *Brady* violation, (2) that his plea was

unknowing and involuntary, (3) *Johnson* renders his sentence unconstitutional, (4) errors by the district court, and (5) ineffective assistance of counsel for failing to object to these (and other) issues. Doc. 326.

### 1. *Brady*

In *Brady v. State of Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* To establish a *Brady* violation, McKenzie must show that the prosecution withheld favorable evidence *and* that it was material to the outcome -- in other words, that he was prejudiced as a result. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). And to establish prejudice, he must show that there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The mere possibility that an item of undisclosed information

might have helped the defense, or might have affected the outcome of the trial," does not establish prejudice. *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). On the other hand, if the nondisclosure put the whole case in a different light -- thus undermining confidence in the verdict -- then that can support relief. Hence, one "can prevail even if . . . the undisclosed information may not have affected the jury's verdict." *Wearry v. Cain*, __ U.S. __, 136 S.Ct. 1002, 1012 n. 6 (2016).

McKenzie fails to point to any prejudice suffered as a result of the alleged nondisclosure. He does not even identify with anything approaching particularity a single piece of evidence that was not turned over by the prosecution. Instead he cites, as proof that *Brady* level material information was withheld: (1) the Court's internal tracking actions on the docket -- including the administrative designation of motions for discovery, reciprocal discovery, and an extension of time, *see* doc. 327 (citing docs. 92, 99 & 100); and (2) the fact that many entries on the docket sheet remained sealed even after his guilty plea was entered. *Id.* at 33 (claiming that the Government committed *Brady* violations by "withholding evidence from [him] such [ ]as denying access to Discovery package see: Criminal docket."). That's nonsense.

McKenzie does not cite *any* evidence, favorable or otherwise, that was withheld from him by the Government. Instead, he simply points to a mass of "stuff" and impliedly invites this Court to rummage through it in quest of support for a *Brady* claim that otherwise fails outright (the Court cannot be his advocate).

### 2. Guilty Plea

Movant attacks the enforceability of his plea agreement's waiver of collateral review provision as a bar to habeas relief. Doc. 327 at 65. He contends, contrary to the record, that the Court failed to explain the waiver at his sentencing hearing, so that any such waiver was not made knowingly or voluntarily. *Id.*

In addition to repeatedly admitting he was guilty of the charges brought against him, *see, e.g.,* doc. 339 at 8-9, McKenzie was fully advised by the Court of just what his guilty plea meant: When asked if he had been in any way pressured to change his plea to guilty, he said no. Doc. 337 at 7. When asked whether anyone had promised him a specific sentence, he said no. *Id.* at 18-19. When asked if he had read the plea agreement and had all of his questions about it answered prior to signing it, he said he had. *Id.* at 22. And the Court explained,

specifically, just what the plea agreement's waiver provisions meant. *See id.* at 22-23 (explaining and affirming that McKenzie understood the Court's explanation of the agreement's waiver of his rights "to a direct appeal of his conviction and sentence on any ground" and "to collaterally attack his conviction and sentence on any ground and by any method, including, but not limited to, a 28 U.S.C. § 2255 motion."). Finally:

> THE COURT: Mr. McKenzie, do you still want to plead guilty to the lesser included offense of Count 1?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you want to plead guilty to that offense because you are in fact guilty of that offense?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand the rights and the privileges that you waive or give up if I accept your plea?
>
> THE DEFENDANT: Yes, ma'am.

Doc. 337 at 24. Based on the exchange, the Court found that McKenzie's plea was both knowing and voluntary, and he *affirmed* that it was indeed both knowing and voluntary. *Id.* at 26. Movant cannot now escape his sworn testimony at the Rule 11 hearing to claim his plea was neither. *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea-taking procedure is careful and

detailed, the defendant will not later be heard to contend that he swore falsely."); *see also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of veracity.").

### 3.   Career-Offender Predicate Offenses

McKenzie contends that his prior state convictions for obstruction of an officer, aggravated assault, and fleeing and attempt to elude no longer qualify as ACCA predicates for an enhanced sentence after *Johnson*.   Doc. 326 at 3; doc. 327 at 6-9.   He was *not*, however, sentenced as a career offender under the ACCA -- his sentence was calculated pursuant to the Guidelines. *See* PSR; docs. 245, 337, 339, 342. This Circuit has held that *Johnson* does not apply in the context of the advisory Sentencing Guidelines. *United States v. Matchett*, 802 F.3d 1185, 1193-94 (11th Cir. 2015).[3]   Every other circuit, however, has

---

[3]   As discussed by the Eleventh Circuit, as a matter of first impression:

> By its terms, the decision of the Supreme Court in Johnson is limited to criminal statutes that define elements of a crime or fix punishments.   The Supreme Court held that the residual clause of the Armed Career Criminal Act "violate[d] the Constitution's guarantee of due process," 135 S.Ct. at 2563, because it violated "[t]he prohibition of vagueness in criminal statutes," *id.* at 2556–57.   It further explained that the vagueness doctrine "appl[ies] not only to statutes defining elements of crimes, but also to statutes fixing sentences." *Id.* at 2557.   The Armed Career Criminal Act defines a crime and fixes a sentence,

---

> see 18 U.S.C. § 924(e), but the advisory guidelines do neither.
>
> The Sentencing Guidelines are merely "the starting point and the initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007), designed to "assist . . . the sentencing judge" in determining a sentence, *United States v. Tichenor*, 683 F.3d 358, 364 (7th Cir. 2012) (quoting *United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999)). In the end, a sentencing judge "must make an individualized assessment based on the facts presented" and "may not presume that the Guidelines range is reasonable." *Gall*, 552 U.S. at 50. "The sentencing judge's authority to exercise discretion distinguishes the Guidelines from criminal statutes in a significant and undeniable manner." *Tichenor*, 683 F.3d at 365.

*Matchett*, 802 F.3d at 1194; *United States v. Johnson*, 2016 WL 6775916 at *1 (11th Cir. Nov. 16, 2016).

[4]    Notably, the Sentencing Commission agrees. As recently summarized by the Eleventh Circuit:

> In response to litigation surrounding *Johnson*, the Sentencing Commission amended the Guidelines -- specifically, the career offender enhancement definition of "crime of violence" -- in August 2016. In so doing, it eliminated the residual clause and removed burglary from the list of enumerated offenses that satisfy the definition. U.S.S.G. Supp. to App. C, amend. 798 (Aug. 1, 2016). The current definition of "crime of violence" includes any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).
>
> *Id.* The Sentencing Commission indicated that the amendment eliminating the residual clause from the career offender guideline arose because of numerous court opinions expressing a view that the definition of "crime of violence" is unclear. *Id.*

*Johnson*, 2016 WL 6775916 at *1. However, Amendment 798 is not helpful to movant because courts apply the version of the Guidelines in effect on the date of sentencing. *Id.* at *4 (citing *United States v. Descent*, 292 F.3d 703, 707 (11th Cir. 2002)). "While subsequent amendments that merely clarify the Guidelines should be

2016) (concurrence) (following *Matchett* but cautioning that that every other court of appeals "has either held or assumed that *Johnson* makes the language in § 4B1.2(a)(2) of the Sentencing Guidelines unconstitutional.") (citing *Beckles v. United States*, __ U.S. __, 136 S.Ct. 2510 (2016) (granting *certiorari* as to whether *Johnson* applies to the Sentencing Guidelines' definition of "crime of violence" and, if so, whether the *Beckles* decision will apply retroactively to cases on collateral review)); *Johnson*, 2016 WL 6775916 at *3. Out of an abundance of caution, the Court will heed *Clayton* and evaluate McKenzie's prior convictions under the *Johnson* framework. Even in doing so, however, McKenzie would still qualify as a career offender.

A defendant qualifies as a career offender under the Guidelines if he is at least 18 years old, has at least two prior felony convictions for either a crime of violence or a controlled substance offense, and his instant federal conviction is for either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). An offense qualifies as a crime

considered on appeal regardless of the date of sentencing, *United States v. Dedeker*, 961 F.2d 164, 166 n.4 (11th Cir. 1992), Amendment 798 to the career offender enhancement is a *substantive* change to the Guideline. . . . As a substantive change to the Guidelines, Amendment 798 does not apply retroactively to his sentence." *Id.* The Court will therefore evaluate McKenzie's prior convictions under the previous version in force at the time of his sentencing (*i.e.*, October 2015).

of violence if: (1) the defendant committed an enumerated offense; (2) "the use, attempted use, or threatened use of physical force against another was an element of the offense;" *or* (3) "the conduct for which the defendant was convicted presented a serious risk of physical injury to another person." *United States v. Lockley*, 632 F.3d 1238, 1241 (11th Cir. 2011); U.S.S.G. § 4B1.2(a) (2015). McKenzie's sentencing was based on his three prior convictions under Georgia law for aggravated assault as a juvenile, possession with intent to distribute cocaine, and felony obstruction of an officer. PSR at ¶¶ 30, 35, 38, 39, 51; *see also* doc. 339 (sentencing hearing transcript).

McKenzie's prior conviction for "felony obstruction of an officer" in violation of O.C.G.A. § 16-10-24 "categorically meets the 'use, attempted use, or threatened use of physical force' requirement of the elements clause of the ACCA" (and, thus, the Guidelines) post-*Johnson*. *United States v. Brown*, 805 F.3d 1325, 1327 (11th Cir. 2015);[5] *see United*

---

[5]   Movant's felony obstruction of an officer conviction is a violent felony under the elements clause because

it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). As used in the elements clause, "the phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person." *Johnson*[, 559 U.S. at 140]. Georgia's felony obstruction statute applies only to those

13

*States v. Tinker*, 618 F. App'x 635, 637 (11th Cir. 2015) (*Johnson* had no

effect on the continued viability of elements clause predicate offenses).

Possession with intent to distribute cocaine in violation of O.C.G.A.

§ 16-13-30[6] is a "controlled substance offense" within the meaning of the

career-offender Guideline. *See* U.S.S.G. § 4B1.2(b). That's two. And

his instant sentence, of course, was for "conspiracy to possess with

intent to distribute, and to distribute," cocaine. Doc. 245. With his two

prior, qualifying convictions of either a "crime of violence" or a "serious

---

who obstruct a law enforcement officer "by offering or doing violence" to the officer's person. O.C.G.A. § 16-10-24(b); *see also Jones v. State*, 276 Ga. App. 66, 68 (2005) ("Felony obstruction . . . requires proof of an additional element - - that the defendant offered or did violence to the officer.").

. . . [T]he amount of violence the Georgia statute requires is enough to satisfy the elements clause of the ACCA.

*Brown*, 805 F.3d at 1327; *see* O.C.G.A. § 16-10-24(b) (effective 1986-2015) (requiring the "offering or doing [of] violence to the person" of an officer to sustain a charge). This offense categorically remains a qualifying "violent felony" post-*Johnson*.

[6]  McKenzie's possession-with-intent to distribute conviction matches the definition of a "controlled substance offense" because: (1) it was a state law crime, (2) punishable by at least five years and up to thirty years, (3) for possession with intent to distribute, of (4) cocaine, a controlled substance. U.S.S.G. § 4B1.2(b); *see* doc. 342-1 at 2-7 (indictment and guilty plea). In 2006, when he was convicted, the statute provided "Except as authorized by this article, it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell or possess with intent to distribute any controlled substance" and made such a violation "with respect to a controlled substance in Schedule I or narcotic drugs in Schedule II" punishable "by imprisonment for not less than five years nor more than 30 years" on the first offense. O.C.G.A. §§ 16-13-30(b),(d) (effective 1997-2012); *see* Ga. L. 1980, p. 432, § 1; Ga. L. 1985, p. 149; Code. Ann. 79A-811(b), (d) (1980); *Dennard v. State*, 265 Ga. App. 229, 229 (2004) (cocaine qualifies as narcotic drug). This offense clearly remains a qualifying "serious drug offense" post-*Johnson*.

14

drug offense," and an instant crime for a "serious drug offense,"

McKenzie glided into career-offender territory.[7]   He was properly

---

[7]   Notably, McKenzie also had another violent felony under his belt -- aggravated assault in violation of O.C.G.A. 16-5-21.  PSR at ¶ 35.  Movant admits he was convicted as a minor (age 17) for aggravated assault.  Doc. 345 at 5 (admitting he "was convicted in a Georgia state court" of aggravated assault in violation of O.C.G.A. §16-5-21).  And parties are bound by the admissions in their pleadings. *Best Canvas Prods. & Supplies, Inc. v. Ploof*, 713 F.2d 618, 621 (11th Cir. 1983).  Too, this Court has repeatedly held a Georgia aggravated assault to be a "violent felony" under the elements clause of the ACCA (and, by extension, the Guidelines) post-*Johnson*. *See Green v. United States*, No. CV416-198 at 7-9 (S.D. Ga. Jan. 9, 2017); *Hayward v. United States*, 2016 WL 5030373 at *3 (S.D. Ga. Sept. 19, 2016); *Neesmith v. United States*, 2016 WL 1688780 at * 2 n. 2 (S.D. Ga. Apr. 26, 2016).  The Government thus argues that this conviction also counts as a crime of violence under the Guidelines, bringing movant up to three qualifying prior convictions for categorization as a career offender.

The history of this conviction, however, is a bit murky.  According to the PSR, McKenzie pled guilty at age 17 to assaulting Demetrius Donaldson with a knife and was assigned "First Offender status."  PSR at ¶ 35.  That status was later revoked, and he was resentenced to seven years of confinement. *Id.*

First Offender convictions normally remain qualifying offenses within the meaning of the Guidelines. *United States v. Knight*, 154 F. App'x 798, 800 (11th Cir. 2005).  But, where a juvenile record has been *expunged*, it *may* be improper for use at sentencing. *See id.* at 799 (noting that in *United States v. Hidalgo*, 932 F.2d 805 (9th Cir. 1991), "the Ninth Circuit held that a defendant's criminal conviction, which had been '"set aside" pursuant to [a statue] which provided for the release of a sentenced juvenile from 'all penalties and disabilities resulting from the offense or crime for which he or she was committed,' was '"expunged" and therefore not properly considered in the court's criminal history calculation.'").  The law in this Circuit is unsettled on this point.

It is unclear whether McKenzie's juvenile conviction was expunged -- the Government has not provided *Shepard* documents supporting this conviction, so the Court cannot guess. *See Shepard v. United States*, 544 U.S. 13, 26 (2005) (courts are limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information" when determining whether a non-generic criminal statute necessarily admits the elements of the generic offense).  Because movant had at least two prior

considered a career offender under the Guidelines.

4.    **Ineffective Assistance of Counsel**

In his last claim, McKenzie argues that his trial counsel was ineffective for failing to: (1) argue that his prior convictions were no longer career-offender predicates; (2) object to the drug quantity and advisory guideline range calculation; (3) object to the calculation of his criminal history; (4) advocate for a minor role reduction; (5) file a motion to suppress; (6) request a mental evaluation; and (7) file a waiver of deportation and advise him of the risk of deportation. *See* docs. 327 & 345.

"To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that his counsel rendered deficient performance and that he was prejudiced by the deficient performance." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In evaluating adequacy of performance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

---

predicate offenses, however, the fact that his prior conviction for an aggravated assault may not qualify as a predicate offense does not change his career-offender designation.

reasonable professional judgment." *Strickland*, 466 U.S. at 690. "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence." *Putman v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001).

As to the prejudice prong, the prisoner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987) (same); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[A]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice.").

i. **Career-Offender Predicates**

As discussed above, McKenzie's prior convictions still count towards career-offender status under the Sentencing Guidelines. U.S.S.G. § 4B1.1(a)(3). Counsel was not ineffective for failing to pursue a "nonmeritorious issue." *Diaz-Boyzo v. United States*, 294 F. App'x

558, 560 (11th Cir. 2008); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

## ii.    Drug Quantity & Guideline Range Calculation

Movant argued at his sentencing hearing, and renews his argument here (slipped under an IAC claim), that the drug quantity calculations should have been limited to one ounce of cocaine. Doc. 327 at 9, 17; doc. 339 at 7-9 (objecting that he sold only 27.79 grams -- less than an ounce (28 grams) -- of cocaine to a confidential informant, so the 500 grams of cocaine attributed to him for his role in the conspiracy was incorrect); *see also* PSR at ¶¶ 1 & 5. As explained at sentencing, McKenzie was recorded on dozens of calls regarding drug-related purchases. Doc. 339 at 11, 15-16; *see* PSR at ¶¶ 6-18 (calls recorded sales transactions of a total 177.19 grams of cocaine base and 343.17 grams of cocaine hydrochloride).[8] His conservatively estimated part in

---

[8]    McKenzie has also expressed confusion over the calculation of his base offense level in his PSR. Doc. 339 at 9. He argues that the conversion of "100-and-something or 200-and-something grams just miraculously put me over the 700-kilogram limit to put me as a career offender." *Id.* To clarify: where different controlled substances (like cocaine base and cocaine hydrochloride) are involved, the Sentencing Guidelines direct a conversion to their marijuana equivalent to standardize the amounts involved. *See* U.S.S.G. § 2D1.1). This way, the applicable base level is standard across the board. *See id.* The conversion of grams of cocaine base and cocaine hydrochloride to their kilograms-of-marijuana equivalent was therefore necessary to assess McKenzie's base offense level -- the *calculation* itself,

18

the conspiracy, for 500 grams or more of cocaine, did *not* hinge on his single transaction of less than an ounce of cocaine -- he was on the hook for his role in the entire enterprise. Doc. 339 at 11, 12-13, 15-16; *see also* PSR at ¶ 18.

Regardless of whether he was on the hook for 28 grams (an ounce) or 500, movant faced a statutory maximum of twenty years for conspiracy to possess with intent to distribute cocaine (*see* 21 U.S.C. § 846; *id.* at §§ 841(a)(1), (b)(1)(C),) -- the foregoing drug quantity calculation ultimately had no effect on his sentence. So, his offense level as a career offender would still be a level 32 even were the Court to have limited the drug quantity calculation to one ounce of cocaine. And counsel's failure to pursue such a "nonmeritorious issue" cannot sustain an IAC claim. *Diaz-Boyzo*, 294 F. App'x at 560; *Winfield*, 960 F.2d at 974.

### iii. Criminal History Calculation

He also contends that counsel was ineffective for failing to object to the calculation of his criminal history. Doc. 327 at 13-14, 19, 28, 30, 39, 63. When McKenzie disputed the recitation of his criminal history

---

however, did not change his actual base level offense in any way. *See* PSR at ¶ 18.

at sentencing, the Court evaluated each objection and ultimately eliminated 2 criminal history points. Doc. 339 10-31; *see* PSR ¶ 45. The Court concluded, however, that because he had "such a long history, [this two-point reduction] doesn't change [his] category" from that of career offender. Doc. 339 at 30. And even had counsel successfully argued away the majority of his criminal history, he still would have remained a career offender. That is, he would have remained in criminal history category VI. *See* doc. 339 at 21 (noting movant has "an extraordinarily lengthy criminal history, and it is not overrepresented in any way."). On this point too, counsel was not ineffective for raising a meritless challenge to the Court's calculation. *Diaz-Boyzo*, 294 F. App'x at 560; *Winfield*, 960 F.2d at 974.

### iv. Minor Role Reduction

Movant argues his counsel was ineffective for failing to argue he played only a minor role in the drug conspiracy and was thus entitled to a minor role reduction under the Guidelines. Doc. 327 at 10-11, 29, 31, 59-60, 63. The evidence set forth by the Government, however, demonstrated that McKenzie was involved in 13 instances of distribution or attempted distribution of cocaine, as part of a "far-

reaching, large-scale drug conspiracy with at least ten members." Doc.

342 at 18-19 (citing PSR at ¶¶ 4-17). Testimony at his sentencing

hearing further underscored his role as being "essentially like a

lieutenant" to the leader of the group. Doc. 339 at 15. This evidence

more than supports a finding that McKenzie was not "substantially less

culpable than the average participant,"[9] precluding any minor role

reduction under the Guidelines. U.S.S.G § 3B1.2, comment (n.3(A)).

Counsel's failure to ask for such a reduction, contrary to the

overwhelming weight of the evidence, therefore, did not constitute

ineffective assistance. *Diaz-Boyzo*, 294 F. App'x at 560; *Winfield*, 960

F.2d at 974.

> v. **Motions**

McKenzie complains his attorney should have filed several

motions, including a motion to suppress the wiretap recordings and a

motion for a mental evaluation. Doc. 327 at 41, 43-44, 64. Even

---

[9]    McKenzie contends that because he pled to the "lesser included offense," rather than to all counts in the indictment, he was rendered eligible for a minor role reduction. Doc. 345 at 22. But that is not how this works. His guilty plea did not *change* his role in the conspiracy, and it certainly did not include any finding that movant's "lack of 'knowledge or understanding' of the scope and structure of the enterprise and of the activities of others [wa]s indicative of a role of minimal participant" or that he "only had perform[ed] a favor and was not involve[d] in the overall activity and Conspiracy[.]" *Id.*; *see* doc. 161 (plea agreement).

assuming his claim were not waived by his voluntary guilty plea, *see Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992), McKenzie's attempt at a Fourth Amendment claim for a wiretap on his phone is meritless because there was simply no wiretap on *his* phone -- he was intercepted on calls to ringleader Mark Green's phone, which was wiretapped. He further fails to identify any way in which that wiretap was improper. As explained by the Government, "[h]ad counsel filed a motion to suppress the wiretap on the ground that it was conducted in violation of the Fourth Amendment, the Court would have denied the motion." Doc. 342.[10]

---

[10] Though the parties do not address the issue, McKenzie also would not have been able to suppress the wiretapped phone conversation under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2521, which establishes a rigorous regime that the Government must follow to intercept the contents of any wire or oral communications. Under the Act, an "aggrieved person" may move "to suppress the contents of any wire or oral communication intercepted . . . or evidence derived therefrom, on the grounds that (i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a). But he does not allege the wiretap was improperly ordered, installed, utilized, or maintained, nor does he point to any action taken by the monitoring agents that he contends was objectively unreasonable. *See United States v. Marroquin-Corzo*, 2012 WL 3245473 at *4-9 (S.D.N.Y. Aug. 7, 2012).

When filing a motion to suppress, a defendant's arguments "must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (cites omitted). "In short, the motion must allege facts which, if proven, would provide a basis for relief. A court need not act

Movant's dispute that his counsel should have sought a mental evaluation also fails. Notably, he asserts no facts indicating he suffered from any mental illness that would impede or call into question his mental competence at the time of the offense, entry of plea, or at sentencing. *See* doc. 342 at 21 (noting he asked his attorney to request prison records and set up a mental health evaluation, but offering nothing to indicate why such records and evaluation were necessary to his defense). None of his statements at his change-of-plea hearing, interview with the probation officer, or plea and sentencing hearings indicate any mental deficiency or delusion. *See* docs. 337 & 339. And the Court found McKenzie competent at his Rule 11 hearing, in accepting his voluntary and knowing guilty plea. Doc. 337 at 25-26.

While an attorney may be deficient if he fails to investigate the well-found possibility of an insanity defense, he cannot be found ineffective if there was not even the slightest hint of mental infirmity. *See Bertolotti v. Dugger*, 883 F.2d 1503, 1514 (11th Cir. 1989) (counsel

upon general or conclusory assertions founded on mere suspicion or conjecture, and the court has discretion in determining the need for a hearing." *Id.* (cites omitted). Thus, any motion to suppress the wiretapped phone calls pursuant to the Federal Wiretap Act also would have been denied.

not ineffective where the only evidence of a defendant's mental instability was "sufficiently equivocal that reasonable counsel would not have been under a duty to secure a psychiatric examination."). Again, counsel's failure to pursue a frivolous claim is not ineffective assistance. *Diaz-Boyzo*, 294 F. App'x at 560; *Winfield*, 960 F.2d at 974.

McKenzie also claims his counsel deficiently failed to file a waiver of deportation and failed to advise him of his deportation risk. Doc. 327 at 48-50. To that end, McKenzie devotes a significant amount of time to arguing against an alleged 16-level enhancement for illegally reentering the United States. *Id.* at 50. But he was not given any enhancement for his citizenship status in the PSR, so his argument that his illegal reentry or citizenship status somehow affected his career-offender categorization is moot. And a moot point does not an IAC claim make.

For that matter, McKenzie told the Court, counsel, and the probation officer that he was born in New York and raised in Georgia. Doc. 337 at 9; PSR at ¶ 59; *see also* doc. 342 at Exh. B. His attorney properly relied on those statements -- made under oath -- that he was a citizen. *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987) (defendant's statements made in open court are

presumed to be true). By accepting him at his word -- again, made under oath -- that he was a citizen, counsel therefore had no reason to advise McKenzie about any deportation risk.

5.     District Court Errors

McKenzie concludes his motion with a statement that the Court erred by denying his request for downward departure. Doc. 327 at 38. Even assuming this conclusory objection was *not* waived by his plea agreement, *see* doc. 161 at 8, there was no basis for a departure. As discussed by the Court at sentencing:

> I see no reason to depart from a sentence called for by application of the advisory guidelines or to vary in any way. . . . Of course, as commented by everybody here today, he does have a lengthy, and frankly serious criminal history that includes convictions for aggravated assault, felony obstruction of a law enforcement officer, possession of cocaine with intent to distribute and others. He's proven reckless and extremely dangerous during several instances of resisting arrest and fleeing law enforcement. . . . My job is to discern a sentence that is sufficient but not excessive to address this man and his particular history. And in doing that, the sentence of 169 months satisfies all of those purposes.

Doc. 339 at 44. Movant shows absolutely no error in the Court's reasoning.

C.     CONCLUSION

Accordingly, Olaudah McKenzie's § 2255 motion should be

**DENIED**.  Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either.  28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added).  Any motion for leave to appeal *in forma pauperis* therefore is moot.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this

R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this ___11th___ day of January, 2017.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA